UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF GEORGIA

SAVANNAH DIVISION

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | |
| v. | ) | Case No. CR415-131 |
| | ) | |
| LEON CARTER | ) | |

## REPORT AND RECOMMENDATION

Indicted on gun charges, defendant Leon Carter has moved to suppress the incriminating statements that he made during a custodial interview by ATF Special Agent Thomas J. Crawford and FBI Special Agent Brent Minton. Doc. 27.[1] Although it is undisputed that the agents administered proper *Miranda* warnings[2] prior to conducting their interview, Carter contends that they violated his Fifth and Fourteenth Amendment rights by overstating the evidence against him, making

---

[1] Crawford taped the interview using his ATF digital recorder while transporting Carter to court. Doc 27 at 1; doc. 31 at 2 n. 2; *see also* doc. 31-1 (CD-ROM copy of that recording). At the December 17, 2015 hearing, the Government represented its belief that Carter was unaware that he was being recorded. Tr. 7. Also at that hearing, Carter's counsel agreed that this motion can be resolved based on the digital recording alone and, hence, there was no need to hear testimony. Tr. 11-12, 14.

[2] *Miranda v. Arizona*, 384 U.S. 436, 444 (1966) (prior to custodial interrogation, a suspect must be advised "that he has a right to remain silent, that any statements he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed").

"implied promises" during the interrogation, and continuing to question him after he indicated his desire to stop talking. *Id.* at 3. Carter, thus, asserts both that his statements were involuntary (*i.e.*, coerced through false promises that his statements would inure to his benefit and by misrepresentations as to the strength of the government's evidence) and that the agents failed to respect his *Miranda* rights once he asserted them. Finding his motion deficient, the Court directed him to re-brief it. *United States v. Carter*, ___ F. Supp. 3d ___, 2015 WL 6690246 at * 2 (S.D. Ga. Oct. 28, 2015). He has. Doc. 30.

## I. ANALYSIS

Upon a supported challenge to the validity of a defendant's custodial statements, the Government must prove, by a preponderance of the evidence, the voluntariness of both the suspect's waiver of his *Miranda* rights and his ensuing confession. *Colorado v. Connelly*, 479 U.S. 157, 168-69 (1986); *Lego v. Twomey*, 404 U.S. 477, 489 (1972).[3] Courts determine voluntariness by assessing the "totality of the circumstances,"

---

[3] To be effective, a waiver of *Miranda* rights must also be "knowing and intelligent" -- *i.e.*, made with a full awareness of the nature of those rights and the consequences of waiving them. *Moran v. Burbine*, 475 U.S. 412, 421 (1986); *Dunkins v. Thigpen*, 854 F.2d 394, 398-99 (11th Cir. 1998).

which requires consideration of "'both the characteristics of the accused and the details of the interrogation.'" *Dickerson v. United States*, 530 U.S. 428, 434 (2000) (quoting *Schneckloth v. Bustamonte*, 412 U.S. 218, 226 (1973)).[4] A court must find "coercive police activity" before it can rule a statement to be involuntary. *Colorado v. Connelly*, 479 U.S. 157, 167 (1986). And the police misconduct must be "causally related to the confession . . . ." *Id.* at 164. Coercion flowing from a different source, such as an accused's mental deficiencies, does not render a statement constitutionally involuntary. *Id.* at 170-71; *Moore v. Dugger*, 856 F.2d 129, 132 (11th Cir. 1988).

It is undisputed that, before any questioning, the agents properly advised Carter of his *Miranda* rights and that his initial waiver of his rights was both knowing and voluntary. As the interview progressed,

---

[4] Courts take into account such factors as the suspect's age, intelligence, and education; his physical and mental condition; his prior experience with the legal process and familiarity with the *Miranda* warnings; the length and nature of the questioning; whether he was advised of his constitutional rights; and whether he was subjected to physical punishment or the threat of such punishment. *Fare v. Michael C.*, 442 U.S. 707, 725 (1979); *Schneckloth*, 412 U.S. at 226; *United States v. Palacios*, 2010 WL 1856238 at * 9 (S.D. Fla. Mar. 15, 2010); 2 Wayne R. LaFave, Criminal Procedure § 6.2(c) (4th ed. 2015); Joshua A. Engel, *Frequent Filers at the Court: The Supreme Court Begins to Take the Experience of Criminal Defendants into Account in Miranda Cases*, 7 Seton Hall Cir. Rev. 303 (2011).

however, Carter contends that the agents utilized tactics that rendered his ensuing statements involuntary. As defense counsel explained at the hearing, "the main thrust" of Carter's suppression motion is that the agents effectively coerced his confession by conveying the impression that he would receive a shorter sentence if he cooperated. Tr. at 10. Counsel conceded that his other contentions -- that the agents improperly overstated the evidence and failed to honor his request to discontinue the interview -- were "weaker" arguments that bore significance only in assessing the totality of the circumstances surrounding the making of the alleged "implied promise." *Id.* at 17.

The notion that the agents promised Carter a lower sentence in exchange for his cooperation is squarely refuted by the record. From the actual recording (doc. 31-1) the Court *verbatim* illuminates the heart of the exchange, where Agent Crawford told Carter:

> Um . . . so I know for a fact that you've had guns. Alright, I know for a fact that you've passed guns around and that kinda stuff. Look, and I want to get one thing straight with ya, okay? Um, we can't, I don't, *I don't want you [to] misconstrue anything that I say as being a promise or some kind of leniency or anything like that* that you may, you know, that you, that you would like to get. Of course, everybody wants to get out of trouble and this that and the other, but at some point in this process, you know . . . it . . . how the federal

> system works is, if a guys goes admits that he done wrong, or she done wrong, then they get what they call "acceptance of responsibility." So, and what that means that everything in the federal system is on a point scale. If you got a really bad criminal history you have a lot of points. So that equates to more points equals time. Just think about it like that. Um, and if you automatically, you know off the bat, you know, start doing the right thing and accept responsibility and you are willing to give information about other crimes and all that is a point deduction, on most cases. *Now, you have to keep in mind that I have no say so in points*. I document what people tell me, but this has been my experience in the federal system. The points deductions come from decisions made by the United States Attorneys' Office, and probation, and the judges, and that kind of stuff.

*Id.* (emphasis added). Carter cites no raised voices, physical threats, the promise of a lower sentence, or anything beyond a general recitation of how the criminal justice system works and the *potential* benefits that accrue to those who cooperate. Doc. 30 at 3-4.

As one commentator has noted, statements inducing the hope of leniency in the mind of the suspect "'are only objectionable if they establish an express quid pro quo bargain for the confession.'" 2 Wayne R. LaFave, Criminal Procedure § 6.2(c) at 624 n. 101 (3rd ed. 2007). A "mere *prediction*" of favorable treatment upon cooperation, unlike a *promise* of a lower sentence, does not qualify as a will-overbearing coercive tactic, *id.* at 624 n. 100, even where that prediction turns out to

be wrong.[5] The Eleventh Circuit adheres to this view. *See United States v. Quinn*, 123 F.3d 1415, 1423-24 (11th Cir. 1997) (police did not improperly induce defendant's confession by telling him that "he was facing a 46-year sentence but might receive a more favorable sentence if he cooperated" and that "it would be more difficult to cooperate once an attorney had been appointed"); *United States v. Nash*, 910 F.2d 749, 752 (11th Cir. 1990) (telling defendant "that cooperating defendants generally 'fared better time-wise'" did not amount to illegal inducement); *United States v. Davidson*, 768 F.2d 1266, 1271 (11th Cir. 1985) (law enforcement assurance that "the accused's cooperation would be passed on to judicial authorities and would probably be helpful to him is not a sufficient inducement so as to render a subsequent incriminating statement involuntary"); *cf. United States v. Beale*, 921 F.2d 1412, 1435 (11th Cir. 1991) (government failed to establish that Spanish-speaking suspect's *Miranda* waiver was voluntary where agents told him his statements "would not hurt him," thereby effectively nullifying the *Miranda*

---

[5] *See United States v. Rutledge*, 900 F.2d 1127, 1128-31 (7th Cir. 1990) (Posner, J.) (officer's statement that "all cooperation is helpful" -- although that "statement was, at least in hindsight, false" – did not undermine the voluntariness of defendant's statement).

warnings).

Here, the agents never promised Carter that he would receive leniency in exchange for his cooperation. Indeed, they cautioned him not to misconstrue their statements "as being a promise or some kind of leniency or anything like that." Doc. 31-1. Carter's counsel nevertheless insisted at oral argument that Agent Crawford crossed the line because the "acceptance of responsibility points" defendant might receive from cooperating would be worthless since Carter's "going to get a minimum of 15 years [anyway if convicted of the gun-possession charge]." Tr. 15. As the above verbatim excerpt from the recorded interview shows, however, Crawford hedged his comments: "all that is a point deduction, *on most cases.* Now, you have to keep in mind that I have no say so in points. I document what people tell me, but this has been my experience in the federal system. The points deductions come from decisions made by the United States Attorneys' Office, and probation, and the judges, and that kind of stuff." Doc. 31-1. There is no suggestion that those statements are untrue. Carter's own response to them, for that matter, evinced not even a hint of involuntariness, but rather that of

a rational individual considering whether to cooperate in exchange for some hoped-for benefit (and, as will be seen, Crawford answered him accurately):

> CARTER: So in other words, you sayin that I got, somehow or another I got possession of a firearm.
>
> CRAWFORD: Yes, you do.
>
> CARTER: Okay, and that possession of that firearm carries what [kind of sentence]?
>
> CRAWFORD: Well, it could be an upwards of 15 years for you. Unfortunately, because you've got a, you've got a bad criminal history, *you've got a history that would put you in a classification that may, that may give, that may be the penalty.*
>
> CARTER: So in other words you're sayin that I somehow or another I possessed a firearm that got recovered from someone else?
>
> CRAWFORD: Yeah, that's what I'm saying.

Doc. 31-1 (emphasis added). Agent Crawford thus explicitly warned Carter that in fact he may reap *no* cooperation-based point reduction at all. Such "'[d]iscussions of [the] realistic penalties . . . are normally insufficient to preclude free choice.'" *Quinn*, 123 F.3d at 1424 (quoting *United States v. Mendoza-Cecelia*, 963 F.2d 1467, 1475 (11th Cir. 1992)); *Nash*, 910 F.2d at 752 ("'telling the [defendant] in a noncoercive manner

8

of the realistically expected penalties and encouraging [him] to tell the truth is no more than affording [him] the chance to make an informed decision with respect to his cooperation with the government'").[6]

In the first of his admittedly "weaker" arguments, Carter contends that the agents "overstated the evidence against [him] in order to gain his cooperation." Doc. 27 at 2. He further contends that, as the interview proceeded, he became uncomfortable and indicated his desire to break off the interview, yet the agents persisted with their questioning. *Id.* at 3. Neither argument has any merit.

Carter states that the agents exaggerated the strength of their evidence by claiming that they "knew for a fact that [he] had guns," and by suggesting that they had audio and video evidence of his gun possession

---

[6] Carter cites *Bram v. United States*, 168 U.S. 532 (1897), for the proposition that the Constitution prohibits the police from making any promises, either implied or expressed, to the defendant in order to gain his cooperation. Doc. 27 at 4. Although *Bram* suggested a per se rule that "any direct or implied promises, however slight" were sufficient to undermine the voluntariness of a confession, the Supreme Court has since made clear that the *Bram* language "does not state the standard for determining the voluntariness of a confession," which, again, is to be assessed by viewing the "totality of the circumstances." *Arizona v. Fulminante*, 499 U.S. 279, 285-86 (1991); *United States v. Lall*, 607 F.3d 1277, 1285 (11th Cir. 2010) (citing *Fulminante*). Carter's reliance on *Bram*, therefore, is misplaced.

and may acquire DNA evidence as well. Doc. 27 at 2. The law is clear, however, that law enforcement deception involving misrepresentations of *fact* (as opposed to misrepresentations of *law*) "are not enough to render a suspect's ensuing confession involuntary, nor . . . undermine the waiver of a defendant's *Miranda* rights." *Lall*, 607 F.3d at 1285. Thus, even if the agents did misrepresent the facts regarding the nature and quality of their evidence (and Carter has not proven any outright lie by the agents), Carter would not be entitled to the suppression of his confession on this ground. *Id.* (citing cases where the police falsely told the suspect that they had acquired compelling evidence of his guilt).

Finally, Carter has not shown that the agents failed to comply with the dictates of *Miranda* by continuing to question him after he indicated that he couldn't "think right now" and did not want to "look like a fool" or "have his head blown off." Doc. 27 at 3. *Miranda*, of course, holds that the police must respect a suspect's decision to invoke his Fifth Amendment right to remain silent, whether he does so "prior to or during questioning." *Miranda*, 384 U.S. at 474. A suspect, however, "must articulate his desire to cut off questioning with sufficient clarity that a

reasonable police officer in the circumstances would understand the statement to be an assertion of the right to remain silent." *Coleman v. Singletary*, 30 F.3d 1420, 1424 (11th Cir. 1994). An ambiguous or equivocal assertion of the right to remain silent (or the right to counsel) is not effective, and the police are under no obligation to ask clarifying questions in order to resolve the ambiguity. *Berghuis v. Thompkins*, 560 U.S. 370, 381 (2010) (a suspect must "unambiguously" assert his right to remain silent under *Miranda*, and in the face of an ambiguous or equivocal request, the police are not required to end the interrogation or ask questions to clarify whether the accused intends to invoke his *Miranda* rights). In this case, Carter never made a clear, unambiguous invocation of his Fifth Amendment privilege to avoid further questioning. Accordingly, the agents were not required to stop their interrogation.

## **CONCLUSION**

The totality of the circumstances surrounding the interrogation establish that Carter made a knowing, intelligent, and uncoerced choice to waive his *Miranda* rights and speak with the agents. His statements were entirely voluntary and were not the product of any "implied

promise" of a reduced sentence or other benefit. Nor did Carter ever invoke his right to remain silent. His motion to suppress should be denied.

**SO REPORTED AND RECOMMENDED** this 14th day of January, 2016.

                                            **UNITED STATES MAGISTRATE JUDGE**
                                            **SOUTHERN DISTRICT OF GEORGIA**